[No. 32662.   Department Two.   June 17, 1954.]

ALBERT WOODS, *Appellant,* v. ROBERT POMMERENING *et al.,*
*Respondents.*[1]

[1]Reported in 271 P. (2d) 705.

*Kennett, McCutcheon & Soderland,* for appellant.

*Skeel, McKelvy, Henke, Evenson & Uhlmann,* for respondents.

WEAVER, J.—This is a malpractice action against defendant doctors. Plaintiff appeals from a judgment dismissing his case with prejudice, after trial to the court.

The record on appeal poses a question which must be resolved before the issues raised can be discussed.

Plaintiff contends that there are two sets of findings of fact before this court, stating that

" . . . the only substantial difference between the two is that one set of findings is more complete than the other."

There appears in the transcript, and in the statement of facts, a document entitled "Findings of Fact and Conclusions of Law," under which is written, admittedly in the handwriting of the trial judge, the words "Offered and Refused." At the end of the document, appears the following:

"These findings as corrected by the Court correctly state facts found by the Court *and are not signed* by the Court solely because the Court is of the opinion that Findings

already entered and signed *sufficiently* cover the same subject matter.

> June 5, '53
> H. C. Agnew
> Judge" (Italics ours.)

We will refer to this instrument as the "proposed findings."

The memorandum of the trial judge was undoubtedly prompted by the fact that the introduction and six numbered paragraphs of the proposed findings are verbatim with the corresponding paragraphs of the findings of fact actually signed by the trial judge; another paragraph is identical, except the corresponding paragraph of the proposed findings of fact contains an additional sentence. The proposed findings include three paragraphs not found in the findings of fact signed by the court.

The proposed findings of fact are not before us. They were offered and refused. In the absence of an assignment of error directed to their refusal, we cannot consider them, nor can we consider argument directed to them, and to the conclusions of law based thereon.

The parties agree that the only issue raised on this appeal is whether defendant doctors were negligent in the administration of gold injections.

Plaintiff consulted defendant dermatologists, Pommerening and Shaw, concerning skin lesions on his face and neck. Dr. Pommerening diagnosed the skin lesions as chronic discoid lupus erythematosus. Dr. Shaw confirmed the diagnosis.

The injection of heavy metal is a recognized treatment for this disease. The therapy consists of periodic injections of heavy metal salts for a definite time, until an effective amount of the therapeutic agent has been administered. Continuity of injections is necessary for the success of the treatment.

Plaintiff was given a series of bismuth injections. After a rest period, a course of gold therapy was started. Because gold has a possible toxic effect on some persons, the usual procedure is to give a small injection the first week and a larger amount the next week. If no adverse reactions are

noted, a therapeutic dose is injected each week for the remainder of the treatment. Dr. Pommerening followed this procedure.

June 28, 1950, plaintiff telephoned Dr. Pommerening. He complained of muscle soreness in his neck, joint pains, and pains in his arms. The next day, plaintiff reported the same symptoms to one of defendant doctors and stated that he did not think he should have a gold injection that day. After an examination, plaintiff was given a final injection. Dr. Pommerening testified that plaintiff did not complain of, nor did he manifest, any symptoms which disclosed an adverse reaction to the gold therapy.

Shortly after the last injection was given, plaintiff developed hepatitis resulting in jaundice.

This action is brought on the theory that defendant doctors proximately caused the jaundice by carelessly and negligently administering excessive amounts of heavy metal salts, over the protest of plaintiff, after toxic symptoms had developed. It is also charged that defendants were negligent in treating plaintiff without advising him of the risk and danger incident to the treatment.

■■ Before a physician or surgeon may be held liable for malpractice, he must have done something in the treatment of his patient which the recognized standard of medical practice in his community forbids in such cases, or he must have neglected to do something required by that standard. To sustain a judgment against a physician or surgeon, the standard of medical practice in the community must be shown. It must also be shown that the doctor failed to follow the methods prescribed by that standard. A conclusion of negligence, upon the part of a physician or surgeon, must be based upon medical testimony, disclosing that he departed from the recognized standard of practice of the community. An exception to this rule is recognized when the negligence is so grossly apparent that a layman would have no difficulty in recognizing it. *Smith v. American Cystoscope Makers, ante* p. 202, 207, 266 P. (2d) 792 (1954); *Cochran v. Harrison Memorial Hospital,* 42 Wn. (2d) 264, 267, 254 P. (2d) 752 (1953); *Derr v. Bonney,* 38 Wn. (2d)

678, 681, 231 P. (2d) 637 (1951); *Fritz v. Horsfall,* 24 Wn. (2d) 14, 17, 163 P. (2d) 148 (1945).

The medical testimony discloses that gold therapy was the usual and standard treatment, in the community, for chronic discoid lupus erythematosus; that defendant doctors used a proper and recognized dosage; that continuity of injections was important for success in the treatment; that it was not the customary standard of practice to tell the patient all the risks involved nor to recite the symptoms; that the judgment of the individual doctor had to be exercised in the light of the mental and psychosomatic make-up of the patient in advising of the risk involved; that when possible symptoms of toxicity arose, they had to be evaluated in relation to the progress gained in the therapy in making a decision whether to continue or stop the treatment.

The trial court found: that Dr. Pommerening had made the usual and customary examination and diagnosis of plaintiff's skin disease; that the treatments of heavy metal therapy, the dosages, the intervals in which the injections were made, and the information given or not given to plaintiff, all represented the usual, customary, and standard practice of dermatologists in the community; that defendant doctors did not deviate from the usual standard practice of dermatologists in the community; and that they were not negligent in treating plaintiff as they did, including the last gold treatment on June 29, 1950.

The record does not preponderate against these findings of fact and we cannot disturb them. *Carns v. Shirley, ante* p. 662, 666, 269 P. (2d) 804 (1954).

Our disposition of the case makes it unnecessary to discuss the remaining assignments of error dealing with the amount of damages and the segregation thereof.

The judgment of dismissal is affirmed.

GRADY, C. J., SCHWELLENBACH, HILL, and DONWORTH, JJ., concur.