[No. 33123. Department One. December 1, 1955.]

OLIVE M. HURSPOOL, *Appellant*, v. F. L. RALSTON, *Respondent*.[1]

[1]Reported in 290 P. (2d) 981.

*Tonkoff, Holst & Hopp* and *Paul R. Roesch*, for appellant.

*Minnick & Hahner*, for respondent.

WEAVER, J.—Plaintiff commenced this action for damages for malpractice against defendant, Dr. F. L. Ralston, an eye specialist of Walla Walla. The trial court sustained a challenge to the sufficiency of plaintiff's evidence. She appeals from a judgment of dismissal.

The oft-quoted rule which governs this case is set forth in *Cochran v. Harrison Memorial Hospital*, 42 Wn. (2d) 264, 267, 254 P. (2d) 752 (1953), as follows:

"We have held that, before a physician or surgeon may be held liable for malpractice, he must have done something in the treatment of his patient which the recognized standard of medical practice in his community forbids in such cases, or he must have neglected to do something required by that standard. In order to sustain a judgment against a physician or surgeon, the standard of medical practice in the community must be shown, and, further, that the doctor failed to follow the methods prescribed by that standard. Negligence on the part of the physician or surgeon by reason of his departure from the recognized standard of practice must be established by medical testimony. An exception to this rule is recognized where the negligence is so grossly apparent that a layman would have no difficulty in recognizing it. *Fritz v. Horsfall*, 24 Wn. (2d) 14, 163 P. (2d) 148, and cases cited."

See, also, *Smith v. American Cystoscope Makers*, 44 Wn. (2d) 202, 266 P. (2d) 792 (1954); *Woods v. Pommerening*, 44 Wn. (2d) 867, 271 P. (2d) 705 (1954); *Skodje v. Hardy*, 47 Wn. (2d) 557, 288 P. (2d) 471 (1955).

We accept plaintiff's evidence and the reasonable inferences therefrom as true, and construe it in a light most favorable to the plaintiff and most strongly against the

defendant. *Rouse v. Morrison-Knudson*, 47 Wn. (2d) 85, 287 P. (2d) 133 (1955).

Plaintiff, while residing in Los Angeles in December, 1943, was advised by a Dr. Biddle that she had a subacute attack of glaucoma in her *left* eye. The doctor treated her eye with drugs, called miotics, and the pressure in her left eye decreased to normal. In 1948, another attack of glaucoma caused her to be hospitalized in Walla Walla. She was under defendant's care. As a result of this condition, plaintiff underwent a trephine operation upon her *left* eye, performed by Dr. Merle Taylor in Portland, Oregon.

November 3, 1951, plaintiff suffered a fracture of the pelvis in an automobile accident. Four days after entering the hospital, she complained of pain in her *right* eye. November 7, 1951, defendant was called to treat her. He diagnosed plaintiff's condition as chronic congestive glaucoma and prescribed the application of miotics, which were used at least until she left the hospital on November 30, 1951.

Defendant testified that on November 21, 1951, he informed plaintiff that he would be absent from Walla Walla on Thanksgiving day, November 22. Plaintiff could not recall the exact dates with any degree of certainty; however, we accept her testimony that defendant did not return for four or five days. Plaintiff testified that while defendant was absent, her right eye became "stony hard" and she lost her vision in that eye. She also testified that Dr. Ralston attended her on November 28. November 30, plaintiff left the hospital and went to Portland, Oregon. More than a month later, "sometime around the first of January," 1952, Dr. Taylor of Portland operated on plaintiff's right eye.

The complaint alleges eight acts of negligence. There is no medical testimony to support six of the alleged acts of negligence, and we consider them no further.

Plaintiff contends that the evidence is sufficient to present the case to the jury, (1) because of defendant's failure to attend her in a manner consistent with the demands of her condition; and (2) because of defendant's failure to operate when he had a duty to do so.

Is there competent medical testimony to establish that defendant's failure to visit plaintiff for four or five days was a deviation from the standard medical practice in the community; that the exigency of plaintiff's condition required an operation under the standard medical practice of the community; and that defendant's failure to perform the operation proximately caused the loss of sight in plaintiff's right eye?

The medical testimony in this case was given by defendant, called as an adverse witness, and by Dr. Marc Anthony, an eye specialist of Spokane, who testified by deposition.

The human eye manufactures aqueous, a transparent fluid which maintains pressure within the eye. In the normal eye, the excess aqueous is carried away through a small tube known as Schlemm's canal. If the balance between normal production of aqueous and normal drainage is upset, pressure builds up inside the eye and the patient has some type of glaucoma. A high tension over a period of time will destroy the optic nerves and blindness will result. High tension causes extreme pain. If tension is reduced prior to total destruction of the optic nerve, partial vision will be restored.

The pressure or tension within the eye can be measured by use of a tonometer. Either of two scales—the McLean or Schiotz—may be used to register the tension. A reading of forty on the McLean scale is high normal for an eye not afflicted with glaucoma.

Dr. Anthony testified that it is standard medical practice to attempt to reduce the tension by the use of miotics. If the tension decreases in response to miotics, surgery is not necessary. Dr. Anthony was asked:

"Q If it [tension] is increasing, though, what is the normal procedure? How much time can you allow to elapse without causing injury to the sight?"

He testified:

"Well, that again depends on how high the pressure is. If it is around 50 by the Schiotz tonometer [80 on the McLean tonometer] then you worry and you watch pretty care-

fully, and if it isn't coming down with Miotics you are pretty anxious for surgery."

The McLean tonometer reading of the tension in patient's right eye, when Dr. Ralston attended her for the first time in the hospital on November 7, 1951, was seventy-four. Subsequent successive hospital recorded tonometer readings disclosed the following readings: November 11, fifty-four; November 13, forty-eight; November 16, forty-six; November 19, fifty-four. Plaintiff testified that defendant checked the tension of her right eye every time he visited her in the hospital, the last time being November 28, 1951, but the result does not appear in evidence. Defendant testified that in view of the general reduction of tension resulting from the use of miotics, from seventy-four on November 7 to forty-six on November 16, the increase to fifty-four on November 19 was a normal variance which may be governed by the time of day the tension is checked. This variance does not signify the necessity of an operation.

The term "stony hard" is used numerous times throughout the record. It refers to a condition of the eye in a state of extreme tension. Although plaintiff's testimony discloses considerable knowledge of glaucoma, there is no medical testimony that the tension in her right eye reached that tension described as "stony hard."

Dr. Anthony testified further:

"As long as they are responding to the drugs, you don't have to give them particular attention, but if they don't respond to the drugs why then you are watching them very carefully."

■ It would unduly extend this opinion to further detail the evidence. After a review of the record before us, we agree with the trial court when it said:

". . . as I interpret the medical testimony it shows beyond any doubt to me that the tension in this eye was receding from the use of myotics and that there is a void or failure on the part of the plaintiff from the evidence to reflect that there was any injury or that there was any damage as result of any failure of the defendant to attend the plaintiff. That the evidence, as I understand it, is to the

contrary, that regardless of whether she was attended or not attended in cases of this kind of glaucoma of some long standing there is a good possibility of some pathological change which is unknown to the medical standard which would cause the loss of the sight of this eye regardless of the fact whether she was attended or not attended . . ."

Plaintiff has failed to meet the requirements of the rule. She has not produced evidence that defendant has done anything contrary to the recognized standard of the medical practice in his community, or has failed to do anything required by that standard.

The judgment is affirmed.

HAMLEY, C. J., SCHWELLENBACH, DONWORTH, and OTT, JJ., concur.

---

January 18, 1956. Petition for rehearing denied.

[1] Reported in 290 P. (2d) 987.