[No. 8796–7–I.   Division One.   May 17, 1982.]

BARBARA HARRIS, ET AL, *Appellants,* v. ROBERT C.
GROTH, M.D., INC., P.S., ET AL,
*Respondents.*

*Olwell, Boyle & Hattrup* and *Lee Olwell,* for appellants.

*Williams, Lanza, Kastner & Gibbs, DeWitt Williams,
Merrick, Hofstedt & Lindsey, H. J. Merrick, Gary Eliasen,*

and *Sidney Snyder, Jr.,* for respondents.

CORBETT, J.—Plaintiff appeals a judgment of dismissal and order denying motion for new trial entered after a defense verdict. We affirm.

Plaintiff, Barbara Harris, has been treated since 1965 for chronic iritis, an inflammatory disease of the front portion of the eye. Plaintiff consulted the defendant, Dr. Groth, in November 1976, at which time she was 42. He diagnosed her condition as iritis and followed the recognized treatment for the disease by prescribing atropine and Maxitrol. Dr. Groth did not test her intraocular pressure. In most cases, during iritis the intraocular pressure remains low. In some cases, the patient responds to the steroid medication, Maxitrol, with increased intraocular pressure. On January 15, 1977, plaintiff was treated by Dr. Topinka, who administered a tonometer test and found her intraocular pressure to be normal. Plaintiff had been treated with steroid medication since 1965, and had not demonstrated any increase in intraocular pressure when tested by various physicians between 1965 and 1977. In early February 1977, plaintiff returned to Dr. Groth. He noted some synechia or binding of the iris to the lens. On March 18, he performed emergency surgery for iris bombe, a complete binding of the iris to the lens. Plaintiff presently suffers severe visual impairment.

Plaintiff relies upon three theories of negligence. First, that Dr. Groth failed to exercise reasonable prudence, as required under the holdings of *Helling v. Carey,* 83 Wn.2d 514, 519 P.2d 981, 67 A.L.R.3d 175 (1974) and *Gates v. Jensen,* 92 Wn.2d 246, 595 P.2d 919 (1979). Second, that Dr. Groth failed to use the skill, care and learning possessed by others in his profession. Plaintiff contends that steroids such as those prescribed by Dr. Groth can elevate intraocular pressure, which can produce optic nerve damage and permanent loss of vision, if sustained for a sufficient period of time. Accordingly, plaintiff argues under both theories that Dr. Groth was negligent in failing to monitor

her intraocular pressure. The third theory of negligence is that Dr. Groth failed to fulfill his duty to disclose alternative diagnostic and treatment procedures to her, under the doctrine of informed consent.

The jury was instructed that the defendant Lindblad was negligent as a matter of law. As a registered pharmacist, he had mistakenly filled the prescription for atropine with Isopto Carpine, a drug which was contraindicated for acute iritis because it had the effect of constricting rather than dilating the pupil. Despite plaintiff's contention that the substitution was a contributing factor or proximate cause of her vision loss, the jury found in pharmacist Lindblad's favor.

The first assignment of error is the trial court's limitation of testimony by plaintiff's expert, Dr. Fredric Harris. Dr. Harris was a research associate professor in the Department of Physiology and Biophysics at the University of Washington Medical School. Plaintiff made an offer of proof concerning Dr. Harris' intended testimony, which included the accepted methods of treating iritis, the diagnosis and treatment of glaucoma, and his opinion as to the proximate cause of plaintiff's injury. The trial court ruled that Dr. Harris could testify within his area of expertise, i.e., physiology, and limited the testimony as follows:

Now, at the other end of the scale, when he tries to testify as to what is the responsibility of a physician when he observes certain signs, symptoms, or he hears certain complaints, I think that this is outside the scope of Dr. Harris' expertise.

. . .

. . . I think that when he tries to testify as to the proximate cause of any disease, or loss of vision of the plaintiff in this case, that he is outside of the field of his expertise. I think if he tries to testify to methods of treatment of a specific physical condition, that he is outside the field of his expertise.

In other words, it does not seem reasonable to me that a person who is not, who could not legally diagnose or treat a condition, should not be testifying as to how to diagnose or treat that condition.

■ The standard of care in a medical malpractice case is generally established only through the testimony of a physician. *Keogan v. Holy Family Hosp.,* 95 Wn.2d 306, 325, 622 P.2d 1246 (1980). Medical testimony is required to establish the negligence of a physician unless the negligence is so apparent that a layman would have no difficulty in recognizing it. *Huttner v. MacKay,* 48 Wn.2d 378, 383, 293 P.2d 766 (1956); *Hurspool v. Ralston,* 48 Wn.2d 6, 7, 290 P.2d 981 (1955). Nor can the expert be called upon to give an opinion as to questions of mixed law and fact, *e.g.,* whether Dr. Groth was negligent. 5 R. Meisenholder, Wash. Prac. § 356 (1979). The determination of expertise and admission of such testimony is largely within the discretion of the trial court and will not be disturbed on appeal, absent a showing of abuse. *Talley v. Fournier,* 3 Wn. App. 808, 814, 479 P.2d 96 (1970). We note that despite the court's ruling to the contrary, Dr. Harris did testify to methods of diagnosis and treatment of iritis and glaucoma and to possible causes of optic nerve damage, although he was careful not to diagnose the plaintiff's condition. The trial court acted within its discretion and did not err by placing the limitation upon Dr. Harris' testimony.

■ The second assignment of error raised by plaintiff is the trial court's failure to direct a verdict that Dr. Groth was negligent as a matter of law. In order to direct a verdict, the trial court must find that there is no competent evidence or reasonable inference which would sustain a jury verdict in favor of the nonmoving party. *Shelby v. Keck,* 85 Wn.2d 911, 913, 541 P.2d 365 (1975); *Levy v. North Am. Co. for Life & Health Ins.,* 90 Wn.2d 846, 851, 586 P.2d 845 (1978). There was testimony on behalf of Dr. Groth that he could not have prevented plaintiff's injuries. Specifically the jury could infer from the evidence presented that the plaintiff did not suffer optic nerve damage, her sight impairment was due to cataracts resulting from the disease of iritis, and tonometry would have shown normal intraocular pressure, until just prior to her iris bombe attack on March 18, 1977. There being substantial evidence to sustain

a jury finding that Dr. Groth was not negligent, the trial court did not err by failing to direct a verdict.

Plaintiff next assigns error to failure of the trial court to instruct the jury concerning reasonable prudence as a standard of care.[1] The requested instruction is substantially that approved in *Gates v. Jensen, supra.* It sets forth a standard of care, the scope and application of which is not clear. 15 Gonz. L. Rev. 931, 938–39 (1980); Annot., 100 A.L.R.3d 1205, 1206 (1980). In the two cases that enunciated the rule of reasonable prudence, *Helling v. Carey, supra,* and *Gates v. Jensen, supra,* the court dealt with the disease of glaucoma, and the testimony was undisputed that simple risk–free tests were available to timely diagnose the condition. Although plaintiff argues the existence of glaucoma in this case, there was substantial evidence to the contrary. The jury was properly instructed concerning the standard of care to be exercised by a specialist.[2] We, there-

---

[1]Plaintiff's proposed instruction No. 5, which was refused by the trial court, reads in pertinent part:

"Irrespective of whether you find that defendant Groth met or failed to meet the applicable standard of care followed by practicing opthalomogists [*sic*] in the diagnosis of glaucoma, if you find that plaintiff Barbara Harris had glaucoma and that the statistical risk of sight loss from glaucoma is serious enough in cases such as Barbara Harris that reasonable prudence under the circumstances required the administration of additional diagnostic tests before March 18, 1977, you are instructed that failure to perform those tests before that date would constitute negligence. In determining whether reasonable prudence would require giving the tests in question, you should consider, among other facts, the cost, ease or difficulty of administration, risk to the patient and relative reliability of the tests in question."

[2]Instruction No. 6, which was given to the jury, states in pertinent part:

"A physician who holds himself out as a specialist owes to his patients a duty to comply with the recognized standard of practice for that specialty prevailing at the time of the treatment in question. This means that he must possess and apply that degree of skill and learning and exercise that degree of care which is ordinarily possessed and exercised by members of the same profession practicing that specialty and acting in the same or similar circumstances. This standard of practice is that established in an area co–extensive with the medical and professional means available in those centers that are readily accessible for appropriate treatment of the patient. Failure to apply such skill and learning or to exercise such care is negligence.

"The degree of care, skill and learning which constitutes the recognized stand-

fore, do not address the argument that the legislature abrogated the rule of reasonable prudence by adoption of RCW 7.70.010 *et seq.*

Plaintiff also assigns error to the failure of the trial court to give requested instructions Nos. 7 and 14. Proposed instruction No. 7 directs the jury to consider the material available in the medical library of the University of Washington in determining the knowledge that should be possessed by an average practitioner. Instruction No. 14 states that any portions of depositions and medical treatises or texts read in court should be considered substantive evidence. A substantial portion of Dr. Harris' testimony was by way of reading from such medical texts, which were to be found at the University of Washington Medical Library.

■■ The basic purpose of instructions is to enunciate the essential elements of the legal rules necessary for a jury to reach a verdict. Instructions should not emphasize certain aspects of the case which might subject the trial judge to the charge of commenting on the evidence. *Laudermilk v. Carpenter,* 78 Wn.2d 92, 100, 457 P.2d 1004 (1969). Proposed instruction No. 7 would have unduly emphasized Dr. Harris' testimony by virtue of his status as the only expert associated with the University of Washington. Proposed instruction No. 14, while a correct statement of the law, would also have emphasized a particular type of evidence. The jury was adequately instructed by instruction No. 1 which explained that the evidence they were to consider consisted of the testimony of the witnesses and the exhibits offered and received. If an existing instruction states the law, an additional proposed instruction need not be given. *Hoffman v. Gamache,* 1 Wn. App. 883, 891, 465 P.2d 203 (1970). Also, the determination of the number of instructions necessary for a jury's understanding of the law is a matter within the discretion of the trial court. *Daly v. Lynch,* 24 Wn. App. 69, 73, 600 P.2d 592 (1979). The court

---

ard of practice and any claimed deviation therefrom must be proved by testimony of members of that profession."

did not abuse its discretion in refusing to give proposed instructions Nos. 7 and 14.

Plaintiff assigns error to the trial court's refusal of proposed instruction No. 10.[3] The defendant, Dr. Groth, admitted that he had made certain entries in his office records and that during the course of his deposition, he had falsely testified that they were correct. The proposed instruction would, therefore, have the effect of charging the jury to disregard his uncorroborated testimony. The court did instruct the jury that they were to judge each witness' credibility in light of all the evidence, including all factors bearing on each witness' believability. The trial court did not abuse its discretion by refusing the proposed instruction. *Daly v. Lynch, supra* at 73.

The plaintiff's final assignment of error is based upon the court's denial of her motion for a new trial, which is predicated upon lack of evidence to support the verdict, and a failure of substantial justice.

■ The testimony of Dr. Shiach, one of plaintiff's experts, was to the effect that atropine does not dissolve adhesions and Carpine does not cause adhesions to form. There was also testimony presented that neither drug would have had any effect upon her eye because of the presence of adhesions due to iritis. Therefore, there was evidence from which the jury could find that the negligent substitution of Carpine for atropine by druggist Lindblad was not the proximate cause of injury to the plaintiff.

The plaintiff claims that her cataracts and chronic iritis were caused by adhesions which Dr. Groth failed to properly treat. She argues that had he taken tonometer readings, they would have disclosed elevated intraocular pressure that could have been reduced, thereby preventing injury. One of defendants' expert witnesses testified that a

---

[3]Proposed instruction No. 10 states, in pertinent part: "[I]f you do believe that a witness has willfully sworn falsely to any material matter in issue, you may disregard the whole of such witness's testimony provided that his testimony is not corroborated by other credible evidence."

pressure reading would have been useless, and Dr. Groth could not have prevented the iris bombe condition which was the immediate cause of her vision loss. There was also evidence from which the jury could reasonably infer the plaintiff failed to cooperate with the recommended course of treatment, thereby permitting the iritis to progress until the vision loss could not be prevented. Also, contrary to the plaintiff's contention, there was testimony to support a finding that she was not a steroid responder so as to require advice by Dr. Groth concerning the risks and possible injury from such pressure. Considering the evidence in the light most favorable to the defendants, there is substantial evidence to support the verdict of the jury that Dr. Groth did not act negligently and absent abuse of discretion, the order denying a new trial will not be reversed. *Daly v. Lynch, supra.*

The judgment is affirmed.

DURHAM, A.C.J., and WILLIAMS, J., concur.

Reconsideration denied June 16, 1982.

Review granted by Supreme Court October 8, 1982.