[No. 26245-6-III.   Division Three.   August 19, 2008.]

REGINA WINKLER, *Appellant*, v. NEIL A. GIDDINGS ET AL., *Respondents*.

---

[22] 105 Wn.2d 39, 45-46, 711 P.2d 295 (1985).

*Thomas M. Roberts*, for appellant.

*James B. King, Christopher J. Kerley*, and *Markus W. Louvier* (of *Evans, Craven & Lackie, PS*), for respondents.

¶1 SWEENEY, J. — This is a medical malpractice case. The trial judge refused to allow the plaintiff's expert witness to testify to the standard of care owed by the defendant physician because the witness was unable to show his familiarity with the standard in Washington. The trial judge was required to make a preliminary finding of fact that the witness was qualified to express opinions on the standard of care before allowing the witness to express those opinions. The judge's finding on those preliminary questions of fact are easily supported by this record. And we affirm the judgment entered on the jury's verdict in favor of the defendant physician.

## FACTS

¶2 Dr. Neil Giddings operated on Regina Winkler to remove a benign tumor, known as acoustic neuroma, which grew in her inner ear. As a result of the surgery, Ms. Winkler lost her hearing in that ear and had other permanent neurological damage to the ear.

¶3 Ms. Winkler sued Dr. Giddings for damages. She claimed negligence and failure to inform her of the options and hazards of the surgery. Specifically, Ms. Winkler claimed that Dr. Giddings violated the standard of care by recommending the surgery and then inappropriately using the suboccipital approach. The suboccipital approach is one of three recognized surgical procedures for the removal of this kind of tumor.

¶4 The trial judge found that Ms. Winkler's medical expert, Dr. Michael Ruckenstein, was not familiar with the relevant standard of care in Washington and refused to allow him to testify as to that standard. Dr. Ruckenstein practices in the area of neuro-otology in Pennsylvania. Neuro-otology is a subspecialty in the ear, nose, and throat medical specialty.

¶5 Ms. Winkler asked Dr. Giddings on cross-examination whether it would be a violation of the standard of care in Washington if the surgeon completely missed the tumor. He responded that it would. At the end of Ms. Winkler's case,

the trial judge directed a verdict on her negligence claim based on her failure to prove the standard of care. The case then went to the jury on the informed consent claim only. The jury returned a verdict in favor of Dr. Giddings.

## DISCUSSION

STANDARD OF CARE

¶6 Ms. Winkler first assigns error to the trial court's refusal to allow her medical expert, Dr. Ruckenstein, to testify regarding the standard of care in this case. Dr. Giddings responds that the trial judge appropriately refused to allow the expert to express an opinion on the standard of care in Washington because Dr. Ruckenstein was unable to say he was familiar with the standard of care in this state.

¶7 The legislature has spelled out the elements a plaintiff must prove to show a physician breached the applicable standard of care. They include that

[t]he health care provider failed to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession or class to which he belongs, *in the state of Washington*, acting in the same or similar circumstances.

RCW 7.70.040(1) (emphasis added).

¶8 Ms. Winkler relies on a number of cases, including two recent cases from this court, to argue that testimony of a "national standard" is sufficient to satisfy the statutory requirement. *Hill v. Sacred Heart Med. Ctr.*, 143 Wn. App. 438, 453, 177 P.3d 1152 (2008); *Elber v. Larson*, 142 Wn. App. 243, 247, 173 P.3d 990 (2007); *Pon Kwock Eng v. Klein*, 127 Wn. App. 171, 176-77, 110 P.3d 844 (2005). These cases are distinguishable for a number of reasons. First, the court's rulings were made in summary judgment proceedings. *Hill*, 143 Wn. App. at 443-45; *Elber*, 142 Wn. App. at 245; *Eng*, 127 Wn. App. at 175. So the standard of review was de novo. *Hill*, 143 Wn. App. at 445; *Elber*, 142

Wn. App. at 246; *Seybold v. Neu*, 105 Wn. App. 666, 675, 19 P.3d 1068 (2001). Here, the standard is the so-called abuse of discretion standard of review. *Bartlett v. Betlach*, 136 Wn. App. 8, 18, 146 P.3d 1235 (2006), *review denied*, 162 Wn.2d 1004 (2007). We say so-called because the use of the word "discretion" in the standard is a bit misleading. *Id.*

¶9 The trial judge here had to make a preliminary finding of fact that Dr. Ruckenstein was qualified to express an opinion on the standard of care in Washington before that testimony was admissible. ER 104(a); *see State v. Watkins*, 71 Wn. App. 164, 170, 857 P.2d 300 (1993). The trial judge was entitled to weigh the evidence in doing so. *See State v. Karpenski*, 94 Wn. App. 80, 103-04, 971 P.2d 553 (1999), *abrogated on other grounds by State v. C.J.*, 148 Wn.2d 672, 63 P.3d 765 (2003). And he did so here. The best that Dr. Ruckenstein offered during the voir dire before his testimony was:

> Q. And it is also true, is it not, that with respect to that issue you simply assumed that the standard of care in the State of Washington was the same as the standards that you're familiar with, for example, in Pennsylvania . . . .
>
> A. I wouldn't like to use simply assume.
>
> . . . .
>
> A. I made an *educated assumption that the standard of care was the same across the country*, yes.

Report of Proceedings (RP) at 90-91 (emphasis added).

¶10 Next, in *Eng*, the expert witness testified unequivocally that the standard of care was a national standard and the standard was the same here in Washington; it was no different. *Eng*, 127 Wn. App. at 178-80. We also recently reversed a summary dismissal, concluding again that testimony that the standard of care is a national standard was sufficient. *Hill*, 143 Wn. App. at 453-55.

¶11 The trial judge here found the witness was not familiar with the standard of care in Washington: "[M]y remarks don't apply to capabilities. They apply to knowledge, and I don't see that he's [Dr. Ruckenstein] got the

knowledge about the standard of care in Washington. It's just not there." RP at 97. That finding is supported by this record and supports the court's ultimate conclusion that Dr. Ruckenstein was not qualified to express an opinion as to the standard of care in Washington as required by the statute. RCW 7.70.040(1). The expert testimony must be based upon the facts of the case and not speculation. *Seybold*, 105 Wn. App. at 677.

¶12 Ms. Winkler argues that here, like in *Eng*, there is a national standard of care. And her expert, Dr. Ruckenstein, wanted to provide testimony regarding that national standard of care for management of Ms. Winkler's condition.

¶13 In *Eng*, Dr. Jacob Young performed successful neurosurgery on Ping Eng's back. *Eng*, 127 Wn. App. at 173. Seven days later, Ms. Eng had a high fever. Her husband immediately took her to the emergency room. She was admitted and under the care of other physicians. *Id.*

¶14 Ms. Eng died 13 days later from a rare form of meningitis. *Id.* at 174. Her husband sued the physicians. A physician moved for summary judgment. Mr. Eng filed a declaration and the deposition of Dr. Vincent Quagliarello, a Connecticut specialist in infectious diseases, in opposition to the summary judgment. Dr. Quagliarello did not testify regarding the standard of care in Washington but as to a "national standard of care" for diagnosing meningitis and his personal experience with neurosurgeons in his own practice. *Id.*

¶15 Unlike the doctor in *Eng*, Dr. Giddings showed that the standard of care differs depending on the area of the country and the surgeon's preference and training. The trial court made a preliminary finding of fact that Dr. Ruckenstein was not familiar with the standard of care in Washington and then concluded that he was, therefore, not qualified to testify by RCW 7.70.040(1). Again, that finding is supported by this record, and that finding supports the judge's conclusion that the requirements of the statute were not satisfied.

### Directed Verdict on Negligence

¶16  Ms. Winkler next assigns error to the trial court's directed verdict that dismissed her negligence claim. She argues Dr. Giddings admitted that if he had missed the tumor completely he would have breached the applicable standard of care. Ms. Winkler also argues that she provided expert testimony that the tumor was still in her ear after the surgery.

¶17  We review de novo a decision to direct a verdict. *Harris v. Groth*, 31 Wn. App. 876, 879, 645 P.2d 1104 (1982) (court must find no competent evidence and no reasonable inference to support a verdict), *aff'd*, 99 Wn.2d 438, 663 P.2d 113 (1983).

¶18  The question before us, and that was before the trial court, is whether Ms. Winkler has met her burden of production. That is, whether she has produced enough evidence to support the elements of her cause of action for negligence. *Id.* Like the trial judge, we must accept the nonmoving party's evidence as true and grant her all permissible favorable inferences. *Phennah v. Whalen*, 28 Wn. App. 19, 22, 621 P.2d 1304 (1980). We affirm the directed verdict only if we can say, as a matter of law, that no evidence or reasonable inferences from that evidence would support a verdict for Ms. Winkler. *Bertsch v. Brewer*, 97 Wn.2d 83, 90, 640 P.2d 711 (1982).

¶19  The trial judge's decision here turned on the failure of Ms. Winkler to prove that Dr. Giddings violated the standard of care in Washington. And, as we have already noted, "expert testimony is required to establish the standard of care and most aspects of causation in a medical negligence action." *Seybold*, 105 Wn. App. at 676.

¶20  Ms. Winkler argues nonetheless that she established a violation of the standard of care through Dr. Giddings' testimony. Dr. Giddings admitted that the failure to remove the tumor—at all—would be a violation of the standard of care. Dr. Giddings also testified that it would be

outside the standard of care if the surgeon used either improper technique or improper equipment, or drilled the wrong part of the ear. But he also testified that he operated in the right area, with the right approach, and with the right equipment.

¶21 Moreover, there is no evidence on this record that the tumor was missed completely. One witness said it was reduced only 0.3 millimeters and that given the resolution of the MRI (magnetic resonance imaging) he could not be sure it was reduced. But that is not substantial evidence that the tumor was not removed at all. The evidence must be more than a scintilla. *Nw. Pipeline Corp. v. Adams County,* 132 Wn. App. 470, 475, 131 P.3d 958 (2006). We conclude that the essential assumption of Ms. Winkler's hypothetical, that the tumor was untouched, is not supported by any inference from the evidence.

¶22 We affirm the judgment entered on the jury's verdict in favor of the defendant physician.

BROWN and KORSMO, JJ., concur.

Review denied at 165 Wn.2d 1034 (2009).