[No. 25669-3-III. Division Three. December 20, 2007.]

NORMA ELBER, *Individually and as Personal Representative*, ET AL., *Appellants*, v. JEFFREY J. LARSON, *Respondent*.

*Richard C. Eymann* and *Steven L. Jones* (of *Eymann Allison Hunter Jones, PS*), for appellants.

*Brian T. Rekofke*; and *Mary H. Spillane* (of *William Kastner & Gibbs*), for respondent.

¶1 SWEENEY, C.J. — This is a medical malpractice suit. The trial judge summarily dismissed the complaint because he concluded that the plaintiff failed to show that the standard of care was the appropriate standard in the state of Washington. The essential question before us is whether the trial judge properly dismissed the complaint because the plaintiff failed to show that the standard of care applied by the plaintiff's expert physician was local to the state of Washington. We conclude that the plaintiff's expert adequately showed that the standard of care in Washington is the same as the national standard. And accordingly, we reverse the summary dismissal and remand for trial.

## FACTS

¶2 Dr. Jeffrey Larson is a neurosurgeon. He performed spinal surgery on Roger Elber. Mr. Elber developed a paralysis after the surgery. He was wheelchair bound but cognitively normal. Mr. Elber later passed away from complications of his paralysis.

¶3 Mr. Elber's wife, Norma Elber, sued Dr. Larson for negligence. Dr. Larson moved for summary judgment. He argued that Ms. Elber had not shown medical negligence, nor had she provided the necessary expert testimony to avoid summary dismissal of her claim. Ms. Elber asked the court to deny Dr. Larson's motion or, alternatively, to continue the motion until adequate discovery could be completed. The trial court granted Ms. Elber a continuance.

¶4 Ms. Elber then deposed Dr. Larson. And she secured the declaration of Dr. Daniel W. Meub. He is a board-certified neurosurgeon who has practiced in either California or Vermont since 1955. Dr. Meub stated that waiting 12 days after there were signs of spinal cord dysfunction before decompressing Mr. Elber's spine was "below the standard of care" and caused Mr. Elber's paralysis: "Had the spine been emergently and adequately decompressed, Mr. Elber would not have experienced the permanent paralysis which ultimately occurred." Clerk's Papers (CP) at 78. He based his opinions on his knowledge, training, and experience, and Mr. Elber's medical records. Dr. Meub's first declaration did not recite that he was familiar with the standard of care in the state of Washington.

¶5 Dr. Larson then filed a reply memorandum urging that Dr. Meub was not competent as a matter of law to render any standard of care opinions because "he has no background, training, education or experience in Washington." CP at 82. Dr. Larson also argued that Dr. Meub's use of the 2002 time frame rather than the 2000 time frame rendered his opinions inapplicable to Ms. Elber's case. The court summarily dismissed Ms. Elber's complaint.

¶6 Ms. Elber moved for reconsideration. She supported her motion with a supplemental declaration by Dr. Meub:

11. I also have contacted medical colleagues in the State of Washington to confirm that the practices of that state are not different from the national standards of the American Board of Neurological Surgery.

12. The standard of care for neurosurgeons performing spine surgery is a national standard. The medicine, anatomy and instrumentation, along with the anticipated risks and benefits of the surgery are the same in Washington State as in California and Vermont. Through my education, experience, training and knowledge I am aware of the standard of care in the state of Washington.

CP at 174-75.

¶7 The court denied the motion for reconsideration.

## DISCUSSION

LOCALITY RULE—NATIONAL STANDARD

¶8 Ms. Elber contends that Washington has abolished the "locality rule" and competent medical testimony does not require knowledge of a particular local practice. Dr. Larson responds that the court properly dismissed Ms. Elber's suit because her expert failed to affirmatively show that he was familiar with the standard of care in Washington and Dr. Meub also failed to connect his opinions to the time frame of Dr. Larson's treatment—2000.

■■ ¶9 Our review here is de novo. *Ski Acres, Inc. v. Kittitas County*, 118 Wn.2d 852, 854, 827 P.2d 1000 (1992). Summary judgment is, of course, appropriate only if the moving party, here Dr. Larson, shows that there is no genuine issue of material fact. CR 56(c); *DeYoung v. Providence Med. Ctr.*, 136 Wn.2d 136, 140, 960 P.2d 919 (1998). We must, however, consider the facts submitted and all reasonable inferences from those facts in the light most favorable to the nonmoving party. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982) (citing *Yakima Fruit*

*& Cold Storage Co. v. Cent. Heating & Plumbing Co.*, 81 Wn.2d 528, 530, 503 P.2d 108 (1972)).

¶10 The plaintiff in a medical negligence case must, almost always (and certainly here), provide expert medical testimony to show that the injury he or she complains of proximately resulted from the failure of the defendant to comply with the applicable standard of medical care. RCW 7.70.040; *Seybold v. Neu*, 105 Wn. App. 666, 676, 19 P.3d 1068 (2001); *McKee v. Am. Home Prods. Corp.*, 113 Wn.2d 701, 706-07, 782 P.2d 1045 (1989). That standard of care is statutory in Washington and requires a showing that "[t]he health care provider failed to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession or class to which he belongs, in the state of Washington, acting in the same or similar circumstances." RCW 7.70.040(1).

¶11 Usually, the qualifications of an expert to express opinions pertinent to a lawsuit are matters addressed to the discretion of a trial judge. *Seybold*, 105 Wn. App. at 678. But that is not the rule when those qualifications and opinions are part and parcel of a summary judgment proceeding; review is instead de novo. *Id.*; *see Folsom v. Burger King*, 135 Wn.2d 658, 663, 958 P.2d 301 (1998).

¶12 Dr. Meub's supplemental declaration says two things pertinent to the locality requirement here. First, it says that he is familiar with the standard of care for neurosurgeons. Second, it states that standard is the national standard. In other words, the standard for a neurosurgeon doing this work in Washington is not any different than the standard for a neurosurgeon doing this work in California, Vermont, or anyplace else in the United States. Now, the necessary inference from this is that he is familiar with the standard of care in Washington because the standard of care is a national standard of care and he is familiar with that standard. And his assertion is not contradicted. Dr. Larson does not suggest that the standard here in Washington is different.

¶13 The analysis in *Pon Kwock Eng v. Klein*[1] is helpful. There, a neurosurgeon operated on Ping Eng's back. Seven days later, Ping developed a high fever. Her husband took her to the emergency room. She was admitted under the care of other physicians. *Pon Kwock Eng*, 127 Wn. App. at 173. Ping died 13 days later from a rare form of meningitis. Her husband sued the physicians involved in her care. *Id.* at 174. A physician moved for a summary judgment. *Id.*

¶14 Pon filed a declaration and deposition of Dr. Vincent Quagliarello. *Id.* He offered an opinion of the standard of care owed by a neurosurgeon to a patient such as Ping. *Id.* at 174-75. He testified to a "national standard of care" for diagnosing meningitis and to his personal experience with neurosurgeons in his own practice:

"Q. So let me make it clear. You are not testifying that Dr. Klein deviated from the standard of care owed by a neurosurgeon to a patient such as Ping Eng in the [s]tate of Washington in October 1999?

"A. No. It would have to do with just being a physician of record, the attending physician of record, whoever that physician is."

*Id.* (alternation in original) (quoting *Pon Kwock Eng* CP at 369-70).

¶15 The trial court concluded that Dr. Quagliarello, a Connecticut specialist in infectious diseases, was not " 'competent to testify as to the standard of care owed by Dr. Klein, a neurosurgeon.' " *Id.* at 175 (quoting *Pon Kwock Eng* CP at 127).

¶16 The Court of Appeals reversed and made two essential points:

"[s]o long as a physician with a medical degree has sufficient expertise to demonstrate familiarity with the procedure or medical problem at issue [he or she] will be considered qualified to express an opinion on any sort of medical question . . . ."

---

[1] *Pon Kwock Eng v. Klein*, 127 Wn. App. 171, 110 P.3d 844 (2005), *review denied*, 156 Wn.2d 1006 (2006).

Thus, "[i]t *is the scope of the witness' knowledge* and not the artificial classification by title that should [resolve the] question of admissibility of expert testimony in a malpractice case."

*Id.* at 177 (emphasis added) (some alterations in original) (internal quotation marks omitted) (quoting *White v. Kent Med. Ctr., Inc.*, 61 Wn. App. 163, 173, 174, 810 P.2d 4 (1991)). And

> [did not] Dr. Quagliarello indicate that diagnostic methods vary according to geographic location[?] To the contrary, Dr. Quagliarello testified that his opinion was based on "what would be [the] national standards of care for diagnosing and treating meningitis."

*Id.* at 179 (emphasis omitted) (third alteration in original) (quoting *Pon Kwock Eng* CP at 353).

¶17 Here, Dr. Meub's knowledge of the medical problem at issue is not disputed. And Dr. Meub is familiar with the standard of care in Washington because it is the same everywhere in this country. CP at 174-75.

¶18 We need not pass upon the propriety of the court striking Dr. Meub's supplemental affidavit because the court ultimately considered it and so then do we. Again, we review these matters de novo, making the same inquiry as the trial court. *Ski Acres*, 118 Wn.2d at 854 (citing *Herron v. Tribune Publ'g Co.*, 108 Wn.2d 162, 169, 736 P.2d 249 (1987)).

■ ¶19 Dr. Larson also urges us to affirm the summary dismissal of the complaint here because Dr. Meub failed to tie his medical opinions to the date of the claimed negligence—2000. It is clear from his declarations that he is reviewing the care provided to Mr. Elber based on medical records from that time period. And he is expressing an opinion about that level of care. And there is no showing that the standards changed, evolved, or were in any way different in 2002.

■ ¶20 Finally, Dr. Larson argues that even if we accept that Dr. Meub's opinions support the plaintiff's claims of

liability, Ms. Elber still has no cause of action under the wrongful death statutes (RCW 4.20.010-.020) or special survival statute (RCW 4.20.060). These arguments were not raised in the trial court, and we will not consider them in the first instance here on appeal. RAP 2.5(a); *State v. McFarland*, 127 Wn.2d 322, 332-33, 899 P.2d 1251 (1995). Also the arguments are not well developed here on appeal.

¶21 We reverse the summary dismissal and remand for trial on the merits.

SCHULTHEIS and KULIK, JJ., concur.

Reconsideration denied February 1, 2008.