**FILED**
**SEPTEMBER 10, 2019**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| KATHIE AND JOE BOYER, individual and the marital community composed thereof, | ) ) ) ) | No. 36166-7-III |
| Appellants, | ) ) | |
| v. | ) ) | PUBLISHED OPINION |
| KAI MORIMOTO, M.D. individually and PLASTIC SURGERY NORTHWEST, a Washington Corporation, | ) ) ) ) | |
| Respondents. | ) ) | |

FEARING, J. — Should the superior court consider a supplemental declaration filed after its memorandum decision granting a party summary judgment, but filed before the court enters its formal order on summary judgment? In this appeal, we answer this question in the negative because the declaration's protagonist did not file a motion for reconsideration or a motion for late filing and thus failed to present the superior court an opportunity to exercise discretion in determining the propriety of the late filing. Therefore, we affirm the superior court's summary judgment dismissal of appellant Kathie Boyer's suit for medical malpractice.

FACTS

Because the superior court granted summary judgment to defendants Dr. Kai Morimoto and Plastic Surgery Northwest (PSNW), we retell the facts in a light favorable to plaintiff Kathie Boyer. Kathie Boyer's husband Joe is also a plaintiff, but we generally refer to Kathie as the sole plaintiff.

Kathie and Joe Boyer reside in Anaconda, Montana, three hundred miles east of Spokane. On September 25, 2015, Kathie Boyer, after losing seventy pounds, consulted with Kai Morimoto, M.D., a plastic surgeon with Spokane's PSNW. Joe attended the consultation. Kathie expressed unhappiness with the appearance of her abdomen and expressed interest in cosmetic abdominoplasty, a surgical procedure to remove excess skin and fat.

Kathie Boyer received saline breast implants on two earlier occasions, most recently in 2006. She noted in the months prior to her appointment with Dr. Kai Morimoto that her right breast implant had reduced in size and had developed rippling. Therefore, she also requested that Dr. Morimoto replace her breast implants and lift her breasts.

During the September 25 consultation, Dr. Kai Morimoto recommended exchanging Kathie Boyer's saline breast implants for silicone implants, a procedure known as a bilateral mastopexy. Dr. Morimoto also recommended abdominoplasty and

liposuction on Boyer's back, hips, and breasts.  The two confirmed October 26, 2015, as the date for the procedure.

Prior to driving to Spokane for Kathie's surgery, Joe Boyer telephoned PSNW to ask whether Kathie's surgery should be rescheduled because Kathie was due to begin menstruating.  PSNW's receptionist informed Joe that the surgery could proceed.  When preparing for surgery on the morning of October 26, Kathie and Joe Boyer informed the surgical nurse that Kathie was menstruating.  The nurse confirmed that Kathie could wear a tampon before surgery.

The surgical procedure by Dr. Kai Morimoto proceeded on October 26, 2015 at PSNW's same day surgical suite in Spokane.  Kathie Boyer received general anesthesia at 10:05 a.m. and remained anesthetized until 7:00 p.m.  The surgical team noted no operative complications.

After surgery, Joe Boyer assisted Kathie to the restroom.  Kathie urinated and inserted a tampon.  She removed no tampon before urinating because Joe and she believed the surgical team removed the last one inserted before surgery.  The couple saw no tampon string before Kathie urinated.

PSNW discharged Kathie Boyer from its surgical facility at 9:55 p.m. on October 26, the day of the surgery.  PSNW staff then instructed Kathie Boyer to return to Spokane for an appointment with Dr. Kai Morimoto on November 13, 2015.  Nevertheless, the Boyers lived many hours afar, so they wished to speak with Dr. Morimoto before

3

departing for Montana.  The Boyers remained in Spokane and returned to PSNW on

October 28.  Dr. Morimoto examined Kathie Boyer and found the operative sites

acceptable.  Still Boyer suffered persistent pain and fatigue.  Boyer requested a stronger

form of pain medication, and Dr. Morimoto accommodated that request by prescribing

oxycodone 5 mg tablets.  Morimoto instructed Boyer to return in two weeks for suture

removal.

On November 4, 2015, while recovering at home in Anaconda, Kathie Boyer

alternatively felt extreme hot and cold in her toes.  Joe removed Kathie's socks and the

two saw blue toes.  In the early afternoon, Joe drove Kathie to the Anaconda Community

Hospital emergency room.  Emergency room physicians diagnosed Boyer's feet as

hypoxic with peripheral cyanosis and mottling of the toes.  Hypoxia is a lack of oxygen;

whereas, cyanosis is blue coloring.  The doctors also diagnosed Boyer with acute renal

failure and significant injury to the liver.  Anaconda emergency room physicians

transferred Boyer to St. Patrick Hospital in Missoula, Montana.  Late that evening,

Missoula's Dr. Stephen Hardy performed exploratory surgery in an attempt to ascertain

the cause of Boyer's illness.  Dr. Hardy explored and debrided the abdominoplasty flap.

He found no necrotizing infection.

On November 5, 2015, an infectious disease physician, Dr. David Christensen,

performed a pelvic examination on Kathie Boyer at the Missoula hospital and found a

tampon in her vaginal vault that had been present for ten days.  Dr. Christensen suspected

4

toxic shock syndrome. Christensen removed the tampon and administered antibiotics, after which Boyer improved dramatically.

St. Patrick's Hospital retained Kathie Boyer for observation in its intensive care unit until November 19. Boyer's discharge summary reads: "[n]o clear microbiologic diagnosis, but etiology most likely staphylococcal toxic shock syndrome, either related to surgical wounds or retained tampons." Clerk's Papers (CP) at 91. Montana physicians predicted future need of amputation of the distal part of Boyer's right foot toes. Boyer returned to Missoula one month later, when a surgeon removed most of the toes on her right foot. Boyer underwent additional surgeries for lingering injury.

PROCEDURE

Kathie Boyer filed suit against Dr. Kai Morimoto and PSNW. Boyer alleges that Dr. Morimoto failed to comply with the applicable standard of care for a plastic surgeon. Boyer also contends that nursing staff committed acts of negligence, for which PSNW is vicariously liable. Boyer claims that Morimoto and the PSNW nursing staff agreed to attend to her menstrual cycle during surgery. According to Boyer, PSNW and Dr. Morimoto affirmatively and falsely asserted that providers had removed any tampon utilized by her before the commencement of surgery and that the providers inserted no tampon or sanitary pad during or after surgery.

During discovery, Kathie Boyer disclosed two expert witnesses, Dr. Martin Siegel and Dr. John Shamoun. Dr. Kai Morimoto and PSNW thereafter filed a motion for

5

summary judgment, asserting that Boyer could not present admissible testimony from a qualified expert to establish the standard of care and to testify to a violation of the standard of care that caused injury.

In response to the defense's summary judgment motion, Kathie Boyer submitted a two-page declaration from Dr. Martin Siegel addressing causation. Boyer also submitted a five-page declaration from Dr. John Shamoun, a plastic surgeon, in order to support a violation of a standard of care.

In his declaration, Dr. John Shamoun testified concerning his background and his knowledge of a standard of care:

> 3. Throughout my career, I have studied, trained and practiced in a variety of locations throughout the country. I have been licensed to practice medicine in six states, with active licensure in two (Texas and California). I also maintain an active surgical license in the United Arab Emirates.
>
> 4. In addition to my professional experience, I have been qualified as a medical expert regarding the standard of care applicable to plastic surgeries like the one at issue in this litigation, in several jurisdictions.
>
> 5. One facet of my role in this case was to offer opinions regarding the standard of care applicable to the October 26, 2015 surgery at the heart of this litigation, as well as whether defendants' conduct fell below the standard of care. The specific medical procedure in question consisted of the following: (1) bilateral breast implant exchange, with mastopexy; (2) liposuction; and (3) abdominoplasty. As a result of my education, training and experience, I am well-versed in the standard of care applicable to healthcare providers performing surgical procedures such as these.
>
> 6. The standard of care in this case required defendants to exercise the same degree of skill, care and learning expected of other reasonably prudent healthcare providers attempting the surgical procedure described in the preceding paragraph. This standard is not unique to the State of Washington and applies on a nationwide basis.

CP at 106-07.

In his declaration, Dr. John Shamoun averred that Dr. Kai Morimoto repeatedly violated the standard of care. Dr. Shamoun opined that Kai Morimoto should not have performed the extensive surgery of breast augmentation with mastopexy, liposuction, and abdominoplasty on an out-patient basis knowing that the patient lived three hundred miles away in Montana and would be traveling home after the procedure. Shamoun criticized the health care providers for discharging Kathie Boyer from the surgical facility at 10 p.m., after her undergoing extensive general anesthesia and a nine-hour surgery, without follow-up care scheduled until eighteen days later. Given the extent of the surgeries and in light of Boyer remaining under the effects of general anesthesia and narcotic pain medication, Boyer should have remained at the surgical center under the care of Morimoto and PSNW throughout the night of October 26-27. Alternatively, Morimoto should not have attempted each of these procedures during a single, out-patient surgery. In short, PSNW and Dr. Morimoto did not provide adequate surgical aftercare.

Dr. John Shamoun faulted Dr. Kai Morimoto and PSNW for its informed consent form signed by Kathie Boyer. PSNW provided Boyer a boilerplate explanation of the risks and benefits of the surgery. PSNW and Dr. Morimoto never warned Boyer of the specific risks and benefits of the surgeries. Because Boyer faced extensive, elective surgeries, the standard of care required more than a standard, boilerplate informed consent form. In particular, the consent form should have identified the option of and

7

explain the benefits of electing to have the three surgeries on separate dates, rather than on the same day.

In his declaration, Dr. John Shamoun noted that Kathie and Joe Boyer repeatedly informed Dr. Kai Morimoto and PSNW that Kathie was menstruating. The couple asked if she could wear tampons during the surgery. In turn, Morimoto and the surgical staff informed her she could wear the tampon and that the staff would attend to her menstruation needs. Nevertheless, the surgical records fail to mention Kathie Boyer's menstruation, any removal of a tampon before or after surgery, or any warning to the Boyers that a tampon remained in the vaginal canal. Dr. Shamoun opined that a tampon should not remain in the vagina during a nine-hour surgery. After surgery, the health care providers should have warned Kathie that a tampon remained inside the vaginal canal assuming the providers did not remove the tampon before or during surgery.

Dr. John Shamoun criticized Dr. Kai Morimoto for her performance during the October 28 follow-up appointment. Kathie Boyer's persistent pain and fatigue should have alerted Dr. Morimoto to potential surgical complications. Morimoto should have explored the cause of the pain, rather than increasing the dosage of the pain medications. Morimoto should have also scheduled an earlier follow-up appointment. Finally, Dr. Shamoun opined that, but for Kai Morimoto's and PSNW's breaches of the standard of care, Boyer would not have suffered the devastating illness and injuries that later developed in Montana.

The superior court entertained oral argument in support of and in opposition to the summary judgment motion on April 27, 2018. During the summary judgment motion hearing, the superior court requested that Kathie Boyer promptly file a curriculum vitae for John Shamoun. On April 30, Boyer filed Dr. John Shamoun's curriculum vitae.

On May 9, 2018, the superior court issued a memorandum decision granting Kai Morimoto's and PSNW's summary judgment motions. The superior court noted that Dr. John Shamoun's "late arriving [curriculum vitae]" revealed active licensure in Texas and California and inactive licensure in Georgia, Florida, Mississippi and Alabama. CP at 323. The court concluded that Dr. Shamoun's declaration failed to present an adequate foundation that the applicable standard of care is national in scope and that Shamoun knew the standard of care in Washington State. Thus, the court held Dr. Shamoun's opinion to be inadmissible. The superior court also concluded that Boyer failed to provide any testimony that any of the nursing staff of PSNW violated a standard of care.

In its May 9 memorandum decision, the superior court directed the parties to prepare a summary judgment order. The closing sentences in the May 9 memorandum decision read:

> Presentment [of the order] is set for June 1, 2018 at 9:00 without oral argument. If plaintiffs contemplate *a motion for reconsideration*, please wait until after the order on summary judgment is entered.

CP at 326 (emphasis added) (boldface omitted).

On May 15, 2018, but before entry of a formal order on summary judgment,

9

Kathie Boyer filed a supplemental declaration of Dr. John Shamoun. Boyer did not

accompany the declaration with a motion for reconsideration or a motion for late filing of

the declaration. In the declaration, Dr. Shamoun clarified the foundation for his opinions.

The declaration states, in pertinent part:

> In addition, throughout my career I have consulted with numerous
> plastic surgeons practicing within the State of Washington, including
> consultations involving the specific procedures at issue in this litigation:
> abdominoplasty, liposuction and mastopexy. As a consequence, I can
> confirm that Washington plastic surgeons adhere to the same standards of
> practice followed by plastic surgeons practicing throughout the rest of the
> nation.
> . . . [T]hroughout my career I have personally been asked to consult
> on specific cases in the State of Washington, including cases involving
> liposuction, abdominoplasty and breast implant/mastopexy surgery. Again,
> as a result of my personal involvement in these kinds of cases, I can
> confirm that the standard of care for surgical procedure such as those at
> issue in this case, is the same in Washington as the rest of the United States.

CP at 328.

On May 17, 2018, defendants filed a proposed summary judgment order. Kai

Morimoto's and PSNW's proposed order omitted reference to Dr. John Shamoun's

supplemental declaration. On May 24, 2018, Kathie Boyer submitted objections to the

defense's proposed summary judgment order. Boyer objected, in part, to her opposition's

summary judgment order because the order failed to list Shamoun's supplemental

declaration. Boyer argued that, because the superior court had yet to enter a final order,

she was permitted to file the supplemental declaration. Boyer submitted her own

proposed summary judgment order, which order listed the supplemental declaration of

Dr. John Shamoun as a pleading reviewed by the trial court.

On June 15, 2018, the superior court penned "Denied" on Kathie Boyer's proposed summary judgment order. CP at 350. On the same day, the court entered an order granting defendants' motion for summary judgment, which order did not mention whether it considered the supplemental declaration of Dr. John Shamoun. In the order, the trial court handwrote additional instructions:

> It is further ordered that any *motion for reconsideration* shall be served, filed and noted for hearing without oral argument, as directed in the Court's Memorandum Decision . . . The Court may request oral argument, depending on the content of any written submissions.

CP at 354 (emphasis added). Kathie Boyer did not move for reconsideration.

## LAW AND ANALYSIS

This appeal poses the following questions. First, did John Shamoun's first declaration provide a sufficient background to conclude that he was qualified to testify to a Washington standard of care? Second, should the superior court have considered John Shamoun's second declaration before entering a summary judgment order? Third, did Kathie Boyer need to move for reconsideration in order for the trial court to consider Dr. John Shamoun's second declaration? Fourth, did John Shamoun's second declaration provide a sufficient background to conclude that he was qualified to testify to a Washington standard of care? Fifth, did Kathie Boyer's experts provide sufficient testimony to raise a question of fact as to whether any violation of the standard of care

11

caused Boyer's postsurgery illness and injury? Sixth, did John Shamoun's testimony

present a question of fact as to a violation of the standard of care of PSNW? The second

and third issues are closely related and will be addressed together. We only answer the

first, second, and third questions, which answers render unimportant the other questions.

Shamoun's First Declaration

If we concluded that Dr. John Shamoun's first declaration sufficed to defeat Dr.

Kai Morimoto's and PSNW's summary judgment motion, we could avoid asking if the

superior court should have reviewed John Shamoun's second declaration. The

defendants assert the superior court correctly rejected the first declaration because

Shamoun offered only a conclusory statement concerning his familiarity with the

standard of care in Washington State. We agree.

In his first declaration, Dr. John Shamoun testified that, throughout his career, he

studied, trained and practiced in a variety of locations throughout the United States. He

had active medical licensure in Texas, California, and the United Arab Emirates.

Shamoun added that he had qualified as an expert witness regarding the standard of care

applicable to plastic surgeons in several jurisdictions, but he did not mention Washington

State. He knew much about the standard of care for a mastopexy, liposuction, and

abdominoplasty. Shamoun concluded that the standard of care for such procedures is not

unique to the state of Washington and applies on a nationwide basis. He did not disclose

how he knew the state of Washington followed the national standard of care. We must

12

determine if the background disclosed and the testimony in this first declaration provides a sufficient basis for Dr. Shamoun to testify to the standard of care of plastic surgeons in the Evergreen State.

Summary judgment in medical malpractice cases may be brought in one of two ways. *Guile v. Ballard Community Hospital*, 70 Wn. App. 18, 851 P.2d 689 (1993). The defendant can attempt to establish through affidavits that no material factual issue exists or, alternatively, the defendant can inform the trial court that the plaintiff lacks competent evidence to support an essential element of her case. *Young v. Key Pharmaceuticals, Inc.*, 112 Wn.2d 216, 225 n.1, 770 P.2d 182 (1989); *Guile v. Ballard Community Hospital*, 70 Wn. App. at 23. In this latter situation, the moving party need not support its summary judgment motion with affidavits. *Young v. Key Pharmaceuticals, Inc.*, 112 Wn.2d at 226. Defendants PSNW and Kai Morimoto employed the second strategy for their summary judgment motions.

In a medical malpractice claim, a plaintiff must show that the health care provider violated the relevant standard of care. A plaintiff must prove the relevant standard of care through the presentation of expert testimony, unless a limited exception applies. *Volk v. Demeerleer*, 184 Wn. App. 389, 430-31, 337 P.3d 372 (2014), *aff'd in part, rev'd in part*, 187 Wn.2d 241, 386 P.3d 254 (2016). Kathie Boyer does not contend that a jury may, without expert testimony, find a physician negligent for releasing a patient to travel three hundred miles to home immediately after a nine-hour surgery with general

anesthesia or leaving a tampon in a patient without informing the patient of its presence.

A defendant moving for summary judgment in a health care professional malpractice suit can meet its initial burden by showing the plaintiff lacks competent expert testimony to sustain a prima facie case of medical malpractice. *Young v. Key Pharmaceuticals, Inc.*, 112 Wn.2d at 226. The burden then shifts to the plaintiff to provide an affidavit from a qualified medical expert witness that alleges specific facts establishing a cause of action. *Guile v. Ballard Community Hospital*, 70 Wn. App. at 25. Affidavits containing conclusory statements without adequate factual support are insufficient to defeat a motion for summary judgment. *Guile v. Ballard Community Hospital*, 70 Wn. App. at 25; CR 56(e).

By Washington statute, the standard of care is the degree of "care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession or class to which he/she belongs, *in the state of Washington*, acting in the same or similar circumstances." RCW 7.70.040 (emphasis added). One might question if the standard of care in Washington ever differs from the standard of care throughout the nation. Law changes from state to state, but medical care holds constant throughout America, at least outside rural areas. Increasingly, medical experts testify that Washington follows a national standard of care. We only know of one recent decision wherein an expert testified that varying geographical locations maintained different

14

standards. We remain bound, however, by our legislature's declaration that the trier of fact must find and apply a state standard of care.

We discern two discrete questions with regard to Dr. John Shamoun's first declaration. First, whether Dr. Shamoun's declaration testimony referenced a standard of care in Washington? Second, whether John Shamoun's declaration testimony showed that he was qualified to testify to the standard of care in the state of Washington? Shamoun testified that the standard of care is not unique to the state of Washington and applies on a nationwide basis. This statement necessarily implies that Shamoun opines to a Washington standard consistent with a national standard. Did he disclose sufficient qualifications and background to do so?

The superior court must make a preliminary finding of fact under ER 104(a) as to whether an expert qualifies to express an opinion on the standard of care in Washington. *Winkler v. Giddings*, 146 Wn. App. 387, 392, 190 P.3d 117 (2008). Usually, the trial court possesses discretion when determining the qualifications of an expert to express opinions pertinent to a lawsuit. *Elber v. Larson*, 142 Wn. App. 243, 247, 173 P.3d 990 (2007). Nevertheless, this court addresses the trial court's ruling concerning qualifications of an expert who renders opinions in response to a summary judgment motion. *Elber v. Larson*, 142 Wn. App. at 247.

When determining whether an expert qualifies to defeat a motion for summary judgment in a medical malpractice action, the court examines the record to determine the

relevant specialty and whether the expert and the defendant practice in the same field. *Young v. Key Pharmaceuticals, Inc.*, 112 Wn.2d 216, 229 (1989); *Seybold v. Neu*, 105 Wn. App. 666, 679, 19 P.3d 1068 (2001). A physician licensed in another state may provide admissible testimony that a national standard of care exists in this state and that the defendant physician violated that standard. *Elber v. Larson*, 142 Wn. App. at 248; *Pon Kwock Eng v. Klein*, 127 Wn. App. 171, 179, 110 P.3d 844 (2005).

We now review Washington decisions in order to discern the background an expert physician must identify in order to claim the Washington standard of care echoes the national standard. Kathie Boyer argues that at least three decisions posit a rule that an out-of-state expert may testify to the Washington standard of care matching the national standard of care without disclosing a basis for his or her knowledge of this conclusion: *Elber v. Larson*, 142 Wn. App. 243 (2007); *Hill v. Sacred Heart Medical Center*, 143 Wn. App. 438, 177 P.3d 1152 (2008); and *Pon Kwock Eng v. Klein*, 127 Wn. App. 171 (2005).

In *Elber v. Larson*, the physician in a medical malpractice suit moved for summary judgment. In response to the physician's summary judgment motion, Dr. Daniel Meub submitted a declaration that the physician violated the standard of care, but the declaration did not recite any facts to show that Meub knew the standard of care in Washington State. The physician contended that plaintiff's witness was not qualified as an expert because Meub lacked background, training, or experience in Washington. The

trial court granted summary judgment. The patient moved for summary judgment and submitted a supplemental declaration from Dr. Meub, in which the expert averred that he contacted medical colleagues in the state of Washington to confirm that the practices of the state are no different from the national standard of the American Board of Neurological Surgery.

This court, in *Elber v. Larson*, reversed and held that a medical expert is qualified to testify to the Washington standard of care if he offers uncontradicted testimony that he is familiar with the standard of care and that the standard is a national standard. During the opinion, this court wrote:

> And Dr. Meub is familiar with the standard of care in Washington because it is the same everywhere in this country.

142 Wn. App. at 249. A constricted reading of this sentence may suggest that an out-of-state expert may supply an opinion by the bald statement that the state standard of care mirrors the nationwide standard.

In *Hill v. Sacred Heart Medical* Center, 143 Wn. App. 438 (2008), John Hill presented testimony from two physicians. One physician testified that the national standard of care controlled the conduct of the health care providers, but did not expressly state that he knew the Washington standard of care to coincide with the national standard. A second physician testified that she knew the Washington standard to parallel the national standard. The second expert had performed her residency in Washington State

17

and practiced in this state for twenty years before moving her practice to Wisconsin. This court relied on both physicians' testimony when reversing a summary judgment dismissal of the medical malpractice suit. The decision implies that the testimony of the first physician by itself would not have sufficed to defeat the summary judgment motion.

In *Pon Kwock Eng v. Klein*, 127 Wn. App. 171 (2005), in opposition to a summary judgment motion, plaintiff Pon Kwock Eng presented the declaration and deposition of Dr. Vincent Quagliarello, a Connecticut specialist in infectious diseases. The defending physician was a neurosurgeon. Dr. Quagliarello testified that the neurosurgeon should have ordered a spinal tap on the patient in order to test for meningitis, but the expert admitted that his opinions were based on a national standard of care and conceded to lacking experience with neurosurgeons in Washington. At the same time, the physician's own experts concurred that, among infectious disease doctors, the standard of care of the diagnosis and treatment of meningitis was a national one. The defendant physician argued that Dr. Quagliarello was not qualified to testify as an expert regarding whether the defendant breached the standard of care of a Washington neurosurgeon. The trial court granted summary judgment.

This court, in *Pon Kwock Eng v. Klein*, reversed after adjudging Dr. Vincent Quagliarello's testimony sufficient. The opinion dealt more with whether a physician in one specialty could testify to the standard of care of a physician practicing in another specialty. The court noted that the defending physician's own experts testified to a

18

national standard of care.

In *Winkler v. Giddings*, plaintiff's expert testified to an "educated assumption that the standard of care was the same across the country." 146 Wn. App. at 392 (2008). Plaintiff presented no other evidence that the Washington standard of care followed the national standard. Dr. Neil Giddings presented testimony that the relevant standard of care differed depending on the area of the country. This court affirmed the trial court's preclusion of plaintiff's expert from testifying and the granting of a directed verdict for the defendant physician.

We conclude that John Shamoun's first declaration did not qualify him to testify to the standard of care in Washington State. Shamoun and Kai Morimoto practice in the same specialty, plastic surgery. Shamoun testified that the standard of care in Washington is identical to the nationwide standard. Nevertheless, Shamoun failed to disclose how he knew Washington's standard to equate to a national standard. He did not suggest he had any exposure to the practice of plastic surgery in Washington State. He did not indicate he spoke with any Washington physician or studied any literature concerning Washington standards.

To a limited extent, *Elber v. Larson*, 142 Wn. App. 243 (2007) confirms our conclusion rather than assisting Kathie Boyer. In *Elber v. Larson*, this court considered the expert testimony of an out-of-state physician because the physician declared that he knew the standard of care in Washington State. Dr. John Shamoun's first declaration

suggested no familiarity with a Washington standard. Assuming *Elber v. Larson* allows a

nonresident physician to claim familiarity with the Washington standard of care without

providing the basis of this familiarity, we deem *Elber* contrary to other Washington

decisions. We hold that the expert must provide some underlying support for his opinion

that the state standard follows the national standard.

Cases involving the need for an expert physician to testify to the underpinning

facts supporting an opinion of a violation of the standard of care bolster our conclusion

that the patient's expert must also provide underlying facts identifying a background that

substantiates that he or she gained knowledge in order to declare the state standard to

equate with the national standard. Under Washington decisions, the expert, in the

declaration contravening a summary judgment motion, must declare what a reasonable

doctor would or would not have done, that the defendant failed to act in that manner, and

that this failure caused the injuries. *Reyes v. Yakima Health District*, 191 Wn.2d 79, 86,

419 P.3d 819 (2018). The expert may not merely proclaim that the defendant physician

was negligent, but must instead establish the applicable standard and detail the facts on

how the defendant acted negligently by breaching that standard. *Reyes v. Yakima Health

District*, 191 Wn.2d 79, 86-87 (2018). Furthermore, the expert must link his conclusions

to a factual basis. *Reyes v. Yakima Health District*, 191 Wn.2d at 87.

In three decisions, Washington courts affirmed summary judgment dismissals in

favor of the defending physician because the plaintiff's expert, although testifying that

the defendant violated the standard of care, failed to particularize the conduct or inaction

of the physician that constituted negligence. *Reyes v. Yakima Health District*, 191 Wn.2d

79 (2018); *Guile v. Ballard Community Hospital*, 70 Wn. App. 18 (1993); *Vant Leven v.*

*Kretzler*, 56 Wn. App. 349, 783 P.2d 611 (1989). In *Guile v. Ballard Community*

*Hospital*, Angelina Guile's expert declared that Guile suffered an unusual amount of

post-operative pain, developed a painful perineal abscess, and was then unable to engage

in coitus because her vagina was closed too tight. The expert further opined that the

faulty technique of the surgeon caused all of these symptoms. The expert surgeon

concluded that the defendant surgeon failed to exercise that degree of care, skill, and

learning expected of a reasonably prudent surgeon at that time in the state of Washington,

acting in the same or similar circumstances. This court characterized the expert's

testimony as a mere summarization of Guile's postsurgical complications, coupled with

the unsupported conclusion that the complications resulted from the surgeon's faulty

technique. The opinions simply reiterated the claims asserted in Guile's complaint.

In *Vant Leven v. Kretzler*, the expert testified that, more probably than not, the

care and treatment afforded by the defendant physician fell below the standard of care in

the medical community. This court affirmed summary judgment in favor of the physician

because the expert failed to identify any facts supporting this conclusion.

The expert's qualification to render medical opinions on the standard of care in

Washington State is as important an element in a medical malpractice case as the factual

21

basis on which the expert supports his opinion. For this reason, we hold that the testifying expert must disclose the factual basis on which the expert purports to know the standard of care in Washington.

Our ruling may conflict with ER 705. This evidence rule reads:

> The expert may testify in terms of opinion or inference and give reasons therefor without prior disclosure of the underlying facts or data, unless the judge requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross examination.

If an expert at trial may render opinions without factual support, an expert should be free to present a declaration in opposition to a summary judgment motion without explaining how he became aware of the Washington standard of care for a health care field or explaining the basis of his knowledge for the state standard of care being commensurate with the national standard. Nevertheless, based on Washington decisional law, we decline to enforce ER 705 in this setting. The law bestows unreciprocated respect and unreturned privileges to the medical profession.

Consideration of Supplemental Shamoun Declaration

Now we must decide whether the superior court should have considered Dr. John Shamoun's supplemental declaration before entering the summary judgment order. The superior court issued its memorandum decision on May 9, 2018. Kathie Boyer filed Dr. Shamoun's supplemental declaration on May 15. The trial court entered its order

granting defendants' motion for summary judgment on June 15. Boyer never sought

reconsideration of the order or permission to file a late declaration.

In advocating reversal, Kathie Boyer relies on language in CR 56 that directs the

superior court to list, in the summary judgment order, the evidence presented to the court

before entering the order. We assume she wants more than a listing of the supplemental

declaration in the order and cites the language of the civil rule in order to argue that a

listing of the declaration should include a consideration of the declaration's contents

when determining whether to grant the motion. Boyer also emphasizes this court's ruling

in *Keck v. Collins*, 181 Wn. App. 67, 325 P.3d 306 (2014), *aff'd*, 184 Wn.2d 358, 357

P.3d 1080 (2015) to the effect that a party can continue to present evidence in opposition

to a motion before the court signs a formal order. Finally, Boyer contends that the

superior court abused its discretion when refusing to consider John Shamoun's

supplemental declaration without first applying the *Burnet* factors. *Burnet v. Spokane

Ambulance*, 131 Wn.2d 484, 933 P.2d 1036 (1997). Conversely, Dr. Kai Morimoto and

PSNW contend that Boyer waived her right to consideration of the supplemental

declaration because she did not file a motion for reconsideration.

Some principles of summary judgment encourage reversal of the superior court's

summary judgment order. A summary judgment is a valuable procedure for ending sham

claims and defenses. *Cofer v. Pierce County*, 8 Wn. App. 258, 261, 505 P.2d 476 (1973).

Nevertheless, the procedure may not encroach on a litigant's right to place her evidence

before a jury of her peers. *Cofer v. Pierce County*, 8 Wn. App. at 261. A reviewing court should reverse a summary judgment order when evidence supports the nonmoving party's allegations. *Preston v. Duncan*, 55 Wn.2d 678, 683, 349 P.2d 605 (1960). Our overriding responsibility is to interpret the rules to advance their underlying purpose of a just determination in every action. *Keck v. Collins*, 184 Wn.2d 358, 369 (2015).

CR 56(h) reads:

> Form of Order. The order granting or denying the motion for summary judgment shall designate the documents and other evidence *called to the attention* of the trial court *before* the order on summary judgment was entered.

(Emphasis added.) Note that the rule requires the superior court to list all declarations presented to it, but not necessarily to consider all declarations. A reciprocal appellate rule, RAP 9.12, also demands listing of the evidence "called to the attention" of the trial court before entry of the summary judgment order.

Other sections of CR 56 bear importance. CR 56(c) reads, in part:

> The adverse party may file and serve opposing affidavits, memorandum of law or other documentation *not later than 11 calendar days* before the hearing.

(Emphasis added.) Of course, CR 6(b)(1) allows the superior court to enlarge the period of time in which to file a pleading on request of a party and for good cause. In turn, CR 56(e) declares, in relevant part:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence,

24

and shall show affirmatively that the affiant is competent to testify to the matters stated therein. . . . The court may permit affidavits *to be supplemented* or opposed by depositions, answers to interrogatories, or further affidavits.

(Emphasis added.)

Kathie Boyer filed the supplemental declaration of Dr. John Shamoun after the superior court issued a memorandum decision, but before the court entered a formal order. A memorandum opinion is not an order or a final disposition. *Felsman v. Kessler*, 2 Wn. App. 493, 498, 468 P.2d 691 (1970). Until a formal order has been entered, the superior court may change its mind. *Felsman v. Kessler*, 2 Wn. App. at 498.

The parties cite numerous Washington decisions, whose procedures include a late filing of a summary judgment affidavit. We review these cases in detail.

We begin with *Keck v. Collins*, the Washington Supreme Court's latest pronouncement on the subject matter and which case also warranted a Court of Appeals published decision. In *Keck v. Collins*, 181 Wn. App. 67 (2014), Darla Keck sued two oral surgeons, Chad Collins and Patrick Collins, who practiced together. Dr. Patrick Collins moved for summary judgment on the ground that Keck lacked expert testimony to show that he violated the standard of care. Collins scheduled the motion hearing for March 30, without consulting Keck's counsel as to counsel's availability. From March 7 to March 20, Keck's counsel, a sole practitioner, was in trial in an unrelated case. Dr. Chad Collins joined in the summary judgment motion on March 14. On March 16, Keck

25

filed a first affidavit of her medical expert, Kasey Li, M.D., that stated Chad violated the standard of care. On March 22, Keck filed a second affidavit of Li, which addressed purported negligence of both oral surgeons. In reply, the surgeons argued that the first and second affidavits lacked specificity as to negligent care. On March 29, ten days after the CR 56 deadline for filing responding affidavits and the day before the summary judgment hearing, Keck filed a third affidavit of Dr. Li that added the facts that supported his opinions concerning the surgeons' violation of the standard of care. In addition, Keck's counsel filed an affidavit explaining the reasons for the late filing of the third affidavit, including his inability to attend to the minutiae of the affidavits while in trial. Keck's counsel requested that the court either forgive the late filing of the third affidavit or grant a continuance of the summary judgment motion hearing. Defendant surgeons moved to strike Dr. Li's third affidavit as untimely. The trial court issued a memorandum opinion granting defendants' motion to strike the third affidavit as untimely and granting the oral surgeons' summary judgment motion. Keck unsuccessfully moved for reconsideration.

On appeal to the Court of Appeals, in *Keck v. Collins*, this court reversed both the superior court's ruling striking Kasey Li's third affidavit and the ruling granting the summary judgment motion. We summarized CR 56. The nonmoving party must file and serve opposing affidavits not later than eleven calendar days before the summary

judgment hearing. CR 56(c). But, the trial court may permit affidavits to be supplemented or opposed by further affidavits. CR 56(e). This court wrote:

> Thus, [u]ntil a formal order granting or denying the motion for summary judgment is entered, a party may file affidavits to assist the court in determining the existence of an issue of material fact.

*Keck v. Collins*, 181 Wn. App. at 83.

This appeals court, in *Keck v. Collins*, did not hold that the trial court must always consider any affidavit, no matter how late, filed before a formal order. Instead, we added that the superior court may strike a late affidavit unless the filer shows good cause for the tardy filing or that justice requires the extension of time. We listed eight factors for the superior court to review:

> (1) The prejudice to the opponent; (2) the length of the delay and its potential impact on the course of judicial proceedings; (3) the cause for the delay, and whether those causes were within the reasonable control of the moving party; (4) the moving party's good faith; (5) whether the omission reflected professional incompetence, such as an ignorance of the procedural rules; (6) whether the omission reflected an easily manufactured excuse that the court could not verify; (7) whether the moving party had failed to provide for a consequence that was readily foreseeable; and (8) whether the omission constituted a complete lack of diligence.

> 15 KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE § 48:9, at 346 (2d ed. 2009) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993)).

*Keck v. Collins*, 181 Wn. App. at 84. One might expect the Court of Appeals to have remanded to the superior court to exercise its discretion in reviewing the factors. Instead, after reviewing the factors on our own, this court held that the superior court erred when not allowing late filing of the affidavit. Because the trial date was months away, the oral surgeons suffered no prejudice by a short delay of the hearing. Darla Keck possessed good cause for the late filing, because of her counsel being in trial during the time that he needed to prepare the affidavits. Defense counsel had failed to coordinate the summary judgment hearing date with plaintiff's counsel. Keck informed the superior court, during the summary judgment hearing, of the specificity in Dr. Li's third affidavit that created a genuine issue of material fact.

The Washington Supreme Court, in *Keck v. Collins*, 184 Wn.2d 358 (2015), affirmed this court's ruling, but disagreed with our analysis. The Supreme Court rejected the eight factors embraced by this court and instead adopted three factors the court previously announced in *Burnet v. Spokane Ambulance*, 131 Wn.2d 484 (1997) with regard to whether an untimely disclosed witness should be permitted to testify at trial. The superior court should on the record, when asked to strike a late affidavit, consider whether a lesser sanction would suffice, whether the violation by the proponent of the evidence was willful or deliberate, and whether the violation substantially prejudiced the opposing party. One might expect the Supreme Court to have remanded to the superior court to assess the three factors, but the court rendered a decision on its own.

This court's *Keck* decision relied in part on its ruling in *Cofer v. Pierce County*, 8 Wn. App. 258 (1973). In *Cofer*, Pierce County sought to dismiss, on summary judgment, Margaret Cofer's suit based on her slip and fall on a wet floor in a county building. During the first summary judgment motion hearing, Cofer's counsel stated that Cofer hired a witness from whom he lacked sufficient time to procure a responding affidavit. According to counsel, the expert witness would testify that the county maintained the floor in a dangerous manner and contrary to instructions given by the contractor who supplied the floor materials. The court granted a continuance of the hearing, but only to allow Cofer to file legal authority opposing the motion. The superior court stated it would not entertain any new affidavits. Two days later, Cofer's counsel filed an affidavit stating that he had contacted the witness, but the witness was hospitalized and unable to assist in preparing and signing the affidavit. Three weeks after the first hearing, the superior court conducted a second summary judgment motion hearing. During the second hearing, the superior court stated that it had considered counsel's affidavit, although it deemed the law precluded it from reviewing an affidavit filed after argument commenced during the first hearing. The superior court still denied the application for a continuance of the summary judgment hearing.

On appeal, this court, in *Cofer v. Pierce County*, addressed whether the superior court should have entertained counsel's affidavit in support of a motion to continue the hearing, not whether the court should have considered any declaration of the expert

witness.  The court held that the superior court correctly considered the affidavit.  In so

doing, the court wrote:

> Under normal circumstances it is not desirable to file affidavits after argument is heard on the motion, but it is a party's right to do so.  Until a formal order granting or denying the motion for summary judgment is entered, a party may file affidavits to assist the court in determining the existence of an issue of material fact.

*Cofer v. Pierce County*, 8 Wn. App. at 261.  The court later intoned:

> [A]n affidavit should be considered at any time prior to entering a final order on the summary judgment.

*Cofer v. Pierce County*, 8 Wn. App. at 263.

This court then held, in *Cofer v. Pierce County*, that the trial court abused its

discretion when not affording Margaret Cofer a continuance in order to secure the

affidavit of her expert witness.  When a party shows the trial court a good reason why an

affidavit cannot be obtained in time for a summary judgment proceeding, the court holds

a duty to accord the party a reasonable opportunity to make the record complete before

ruling on a motion for summary judgment.

*Cofer v. Pierce County*, in turn, relied on *Felsman v. Kessler*, 2 Wn. App. 493

(1970).  In *Felsman v. Kessler*, this court held that the superior court should have

considered affidavits filed after the superior court issued a memorandum decision

granting John and Juanita Kessler summary judgment dismissal of Shirley Felsman's suit.

Felsman sued as the result of the shooting death of her husband on the Kessler land.

Felsman claimed that John Kessler and Kessler's employee, Don Keys, conspired to kill the husband because he trespassed while hunting. Both Kesslers signed affidavits in support of the motion, in which they denied that they employed Keys or that either promoted the killing of the husband. In response, Felsman's counsel filed an affidavit stating that witnesses had told him that John Kessler hired Keys to keep unauthorized hunters from Kessler's land. Thereafter, on the day of the summary judgment hearing, Felsman's attorney conducted the deposition of both John and Juanita Kessler. Both Kesslers refused to answer questions on the basis of the Fifth Amendment to the United States Constitution. During the summary judgment hearing later that day, Felsman's counsel commented about the Kesslers' refusal to answer questions and added that John Kessler also refused to answer questions during a coroner's inquest. Three days later the superior court issued a memorandum decision granting the motion. Four days after the issuance of the decision, Shirley Felsman filed a motion to extend time to file additional affidavits. The superior court tentatively granted the motion with the caveat that it would later decide the admissibility of late affidavits. Thereafter, Felsman filed the depositions of John and Juanita Kessler and an affidavit of a witness who stated John Kessler told him that Don Keys was his employee and that Keys and Kessler had agreed, after the shooting, that Keys should disappear. The superior court later refused to consider the depositions and the affidavit, and the court entered a formal order granting the Kesslers' dismissal of the suit.

This reviewing court, in *Felsman v. Kessler*, first noted the rule that a summary judgment motion should not be granted when critical facts lie solely in the possession of the moving party. Application of this rule could have resulted in an automatic reversal and an end to the opinion. Nevertheless, the court added that, because of the witness' affidavit, the coroner's inquest testimony, and the Kesslers' refusal to be cross-examined with regard to their affidavit testimony, the court should have considered the late evidence before signing the summary judgment order. The court wrote:

> While we do not encourage or condone plaintiff's awaiting the court's ruling on the motion and then scurrying around to get affidavits and other matters before it in an attempt to change the court's mind, the fact remains that until an order is entered formally denying the motion, this avenue is available.

*Felsman v. Kessler*, 2 Wn. App. at 498 (1970). The court reversed for a trial.

By filing the supplemental declaration of Dr. John Shamoun after the superior court's ruling, Kathie Boyer in essence sought to reopen the case for further evidence. At the least, Boyer sought reconsideration of the summary judgment ruling. Nevertheless, Boyer failed to file any motion to reopen or for reconsideration. The superior court had twice hinted that Boyer may wish to file a motion for reconsideration. Boyer never earlier filed a motion for a continuance of the summary judgment hearing in order to procure needed testimony.

In *Keck v. Collins*, Darla Keck at least filed the late supplemental declaration one day before the summary judgment hearing. Keck then requested late filing or a

continuance. Keck's counsel filed an affidavit explaining the need for the late filing. This court and the Supreme Court found good cause for the late filing of the supplemental declaration under two distinct tests. Keck moved for reconsideration after the granting of the summary judgment motion.

A literal reading of *Cofer v. Pierce County* strongly supports Kathie Boyer's contention that she was entitled to file affidavits at any time before the superior court signed the summary judgment order on June 15, 2018. Nevertheless, Margaret Cofer's counsel filed an affidavit for a continuance. Cofer's attorney showed that a delay in procuring an expert's affidavit resulted from the hospitalization of the expert witness.

*Felsman v. Kessler* holds unique facts. Defendants signed an affidavit supporting their motion for summary judgment, but then refused to be cross-examined about the same facts during a deposition. After the issuance of the memorandum decision, Shirley Felsman asked the court for late filing of affidavits in part because of the refusal of the defendants to answer questions during their depositions.

In this appeal, Kathie Boyer filed the supplemental declaration after the superior court's memorandum decision. Boyer never asked the superior court to exercise its discretion in determining whether to review the supplemental declaration of Dr. John Shamoun. Boyer never presented good cause for the late filing. Boyer never argued to the superior court that the supplemental declaration presented a question of fact sufficient to deny the defense's summary judgment motion.

One might characterize as overly technical a requirement that the party filing a late affidavit also file a motion for permission to file late or file a motion for reconsideration after a ruling. After all the superior court should have recognized when it presumably saw the supplemental declaration of John Shamoun that Kathie Boyer wanted to file the affidavit late and gain reconsideration of its memorandum decision. Nevertheless, requiring one or more motions to accompany the supplemental declaration serves legitimate purposes. With the motion for late filing, Kathie Boyer would have or at least should have included an affidavit or other support to show good cause for extension of the time for filing. The superior court could then have also determined the applicability of the *Burnet v. Spokane Ambulance* factors. With the motion for reconsideration, Kathie Boyer would have or at least should have presented argument as to why the supplemental declaration defeated the defendants' summary judgment motion. Without these motions and the motions' support, the superior court lacked a basis on which to determine whether to review the declaration and assess whether the declaration should change the court's decision.

On appeal, Kathie Boyer complains that the superior court never applied the *Burnet v. Spokane Ambulance* factors. Nevertheless, Boyer never identified the factors for the superior court, nor asked for their application. The superior court deserved an opportunity to hear this request from Boyer before any appeal. PSNW and Kai Morimoto deserved an opportunity to address the *Burnet* factors and argue against the merits of the

supplemental declaration before any appeal. Even on appeal, Boyer has not analyzed

why the *Burnet* factors apply in her favor.

We do not review new arguments on appeal. RAP 2.5(a); *State v. Nitsch*, 100 Wn.

App. 512, 519, 997 P.2d 1000 (2000). The prerequisite affords the trial court an

opportunity to rule correctly on a matter before it can be presented on appeal. *State v.*

*Strine*, 176 Wn.2d 742, 749, 293 P.3d 1177 (2013). The rule serves the goal of judicial

economy by enabling trial courts to correct mistakes and thereby obviate the needless

expense of appellate review and facilitates appellate review by ensuring that a complete

record of the issues will be available. *State v. Strine*, 176 Wn.2d 742, 749-50 (2013);

*State v. Scott*, 110 Wn.2d 682, 685, 757 P.2d 492 (1988).

No Washington case obligates the superior court to accept summary judgment

affidavits after the hearing or a memorandum decision without the proponent complying

with some test. All Washington decisions involve the nonmoving party initiating some

action for the court to review the affidavit other than simply filing the affidavit.

When filing the supplemental declaration of Dr. John Shamoun, Kathie Boyer

ignored the provisions of CR 6(b)(1). The rule allows the superior court to enlarge the

period of time in which to file a pleading on request of a party and for good cause. We

should bend the rules to further justice and to reach the case's merits, but we should also

enforce rules in order to afford an orderly presentation of evidence and argument before

the superior court.

35

PSNW and Dr. Kai Morimoto also ask for affirmation of the summary judgment order because Dr. John Shamoun's testimony did not establish causation. PSNW further contends that Shamoun raised no issue as to the negligence of any of its employees. Because we affirm the trial court's ruling that Dr. Shamoun failed to confirm his knowledge of the Washington standard of care, we do not address these additional arguments.

## CONCLUSION

We affirm the summary judgment dismissal of Kathie Boyer's claims against Dr. Kai Morimoto and PSNW.

_Fearing, J._

Fearing, J.

WE CONCUR:

_Korsmo, J._

Korsmo, J.

_Lawrence-Berrey, C.J._

Lawrence-Berrey, C.J.

APPENDIX

Washington may alone follow a formulaic test when deciding whether a party may file affidavits after the trial court's memorandum decision. The foreign courts issuing these decisions follow civil rules similar, if not identical, to Washington's CR 6 and CR 56.

Alabama

Rule 6(d) allows the trial court discretion to permit the service of affidavits that might otherwise be untimely, and its decision to accept such affidavits will not be reversed absent an abuse of discretion. *Weldon v. Cotney*, 811 So. 2d 530 (Ala. 2001).

Arizona

The trial court holds discretion as to whether to allow filing of affidavits after a hearing on a motion for summary judgment. *7-G Ranching Co. v. Stites*, 4 Ariz. App. 228, 419 P.2d 358 (1966).

Arkansas

Trial court need not consider affidavits filed one week after the hearing. *Graham v. Underwood*, 2017 Ark. App. 498, 7, 532 S.W.3d 88, 93-94.

Colorado

A supplemental affidavit of an expert medical witness filed by a medical malpractice plaintiff after motion for summary judgment in favor of defendant physician was granted could not be considered in motion to reconsider when the plaintiff neither asserted nor established that evidence could not have been discovered in exercise of reasonable diligence before summary judgment hearing. *Conrad v. Imatani*, 724 P.2d 89 (Colo. App. 1986).

Connecticut

Trial court did not abuse discretion when granting party summary judgment while refusing to consider nonmoving party's late affidavits. *Cornelius v. Rosario*, 138 Conn. App. 1, 51 A.3d 1144 (2012).

Florida

The Florida Court of Appeals reversed the grant of a summary judgment because an affidavit filed in support of the motion was filed two days after the summary judgment hearing. The court ruled that, if a reviewing court is to consider a late filed affidavit, the trial court record must show that the trial court granted permission for late filing. *Kendel v. City of Miami*, 281 So. 2d 566 (Fla. Dist. Ct. App. 1973).

Georgia

Party filed summary judgment affidavits after the hearing. The party requested permission for late filing, but failed to attempt to show excusable neglect. The trial court did not abuse its discretion in denying late filing. *Harrell v. Federal National Payables, Inc.*, 264 Ga. App. 501, 591 S.E.2d 374 (2003).

The Georgia Court of Appeals ruled that the trial court holds discretion in whether to consider a late filed summary judgment affidavit. In the absence of a record to the contrary, the court will assume the court exercised its discretion in denying late filing. *U.S. Enterprises, Inc. v. Mikado Custom Tailors*, 163 Ga. App. 306, 293 S.E.2d 533, *rev'd on other grounds*, 250 Ga. 415, 297 S.E.2d 290 (1982).

Idaho

A party may not submit summary judgment affidavits after the summary judgment motion hearing. *Jarman v. Hale*, 122 Idaho 952, 842 P.2d 288 (Ct. App. 1992), *abrogated on other grounds by Puckett v. Verska*, 144 Idaho 161, 158 P.3d 937 (2007).

Illinois

Affidavits may not be added by either party as a matter of right after a hearing and decision on a motion for summary judgment, but rather the allowance of affidavits presented for the first time in connection with a motion to vacate is within the discretion of the trial court. *Kaplan v. Disera*, 199 Ill. App. 3d 1093, 557 N.E.2d 924, 145 Ill. Dec. 945 (1990).

Indiana

Trial court did not abuse its discretion in rejecting filing of summary judgment affidavits submitted after the hearing and the court's ruling. *Keesling v. Beegle*, 858

N.E.2d 980 (Ind. Ct. App. 2006), *aff'd in part, vacated in part*, 880 N.E.2d 1202 (Ind. 2008).

Adverse party must file summary judgment affidavits before the summary judgment hearing, even if the trial court extends the hearing to another date. This deadline will be enforced despite a court rule that reads: all pleadings "shall be so construed as to do substantial justice, lead to disposition on the merits, and avoid litigation of procedural points." The adverse party requested late filing of expert affidavits. The trial court could have granted the request, but the court's denial of the request was not an abuse of discretion because the party had ample time to timely file the affidavits. *Winbush v. Memorial Health System, Inc.*, 581 N.E.2d 1239 (Ind. 1991).

Kentucky

Adverse party may not file contravening affidavit after the summary judgment hearing. *Skaggs v. Vaughn*, 550 S.W.2d 574 (Ky. Ct. App. 1977).

Louisiana

Trial court should not have considered plaintiffs' affidavits on defendants' motions for summary judgment filed several months after hearing on motions. *Vardaman v. Baker Center, Inc.*, 98 2611 (La. App. 1 Cir. 3/13/98), 711 So. 2d 727.

Maine

Although parties must ordinarily submit facts in advance of the hearing, trial court may exercise discretion in permitting late affidavits that provide additional foundational support for facts previously offered, not additional facts. *City of Augusta v. Attorney General*, 2008 ME 51, 943 A.2d 582.

Michigan

Trial court need only consider affidavits in front of it at the time of the summary judgment hearing. *Apfelblat v. National Bank Wyandotte-Taylor*, 158 Mich. App. 258, 404 N.W.2d 725 (1987).

Minnesota

Party submitted an affidavit after the date of the hearing without submitting an

additional affidavit or any other explanation why the first affidavit was untimely. The trial court was within its discretion in refusing to consider the affidavit. *American Warehousing & Distributing, Inc. v. Michael Ede Management, Inc.*, 414 N.W.2d 554, 557 (Minn. Ct. App. 1987).

Mississippi

Trial court correctly struck a summary judgment affidavit filed after the rule's deadline. *Luvene v. Waldrup*, 905 So. 2d 697 (Miss. Ct. App. 2004), *aff'd in part, rev'd in part,* 903 So. 2d 745 (Miss. 2005).

Missouri

The adverse party must file an affidavit before the summary judgment hearing. A party may file a late affidavit only with leave of the court. *Richardson v. Rohrbaugh*, 857 S.W.2d 415, 418 (Mo. Ct. App. 1993).

Montana

The trial court did not abuse its discretion in striking, as untimely, additional affidavits prepared two days after hearing. *Konitz v. Claver*, 1998 MT 27, 287 Mont. 301, 954 P.2d 1138.

New Jersey

When plaintiffs' affidavit in opposition to motion for summary judgment was served the day before the hearing, the trial court was free to disregard the affidavit as it failed to comply with rule requiring adverse party to serve opposing affidavits not later than two days prior to date of hearing. *Ash v. Frazee*, 37 N.J. Super. 542, 117 A.2d 634 (Ct. App. Div. 1955)

New York

Trial court properly denied review of a summary judgment affidavit filed after the hearing. The proponent failed to show good cause for leave to serve the affidavit late. *Gnozzo v. Marine Trust Co. of Buffalo*, 258 A.D. 298, 17 N.Y.S.2d 168 (1939), *aff'd*, 284 N.Y. 617, 29 N.E.2d 933 (1940).

Ohio

Trial court need not entertain summary judgment affidavits filed after the hearing date. *Carlton v. Davisson*, 104 Ohio App. 3d 636, 662 N.E.2d 1112 (1995).

Tennessee

Trial court erred when granting defendant a summary judgment motion when defendant filed affidavits after the hearing. *Baker v. Lederle Laboratories*, 696 S.W.2d 890 (Tenn. Ct. App. 1985).

Texas

The affidavits must be before the court at the time of the summary judgment hearing. Otherwise, summary judgment evidence may be filed late, but only with leave of court. *RDG Partnership v. Long*, 350 S.W.3d 262 (Tex. App. 2011).

Trial court not required to consider an affidavit filed after the summary judgment hearing. Any late filing must be done with permission of the court. *Aztec Pipe & Supply Co. v. Sundance Oil Co.*, 568 S.W.2d 401, 403 (Tex. Civ. App. 1978).

Utah

Trial court held discretion in determining whether to review a late filed affidavit. *G. Adams Limited Partnership v. Durbano*, 782 P.2d 962 (Utah Ct. App. 1989).

Wisconsin

Wisconsin Court of Appeals held that the trial court need not have entertained a late filing of a summary judgment affidavit because the proponent of the affidavit never sought to enlarge the time for filing. *David Christensen Trucking & Excavating, Inc. v. Mehdian*, 2006 WI App 254, 297 Wis. 2d 765, 726 N.W.2d 689.